IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

MAXIMUS, INC.

        Plaintiff,

v.

TWIN CITY FIRE INSURANCE CO. and
AXIS REINSURANCE CO.

        Defendants.

Case No. 1:11CV1231-LMB/TRJ

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
COUNT I OF BOTH DEFENDANTS' COUNTERCLAIMS**

Defendants' Opposition to Plaintiff's Motion to Dismiss is at odds with both the plain language of their policies and with case law that has governed the issue of exhaustion of underlying policy limits for over 80 years.  (Doc. 40; hereafter "Defendants' Br.")  Under Axis' interpretation of its policy, if Maximus settled with a single one of its three underlying insurers for one dollar less than the limits of liability of the underlying policies, then Maximus would permanently forego the right to any excess coverage.  And under Twin City's interpretation of its policy, a single below-limits settlement with any of Maximus' four underlying insurers would render Twin City permanently immune from having to pay any of Maximus' damages – representing an enormous windfall to Twin City.  Even if Maximus incurred damages in excess of $60 or $70 million – the attachment points contractually accepted by Axis and Twin City, respectively – Axis and Twin City would pay nothing.  Guiding legal precedent does not permit such an irrational outcome, and this Court should resist the Defendants' efforts to invoke inapposite case law or revised policy wording to achieve this result.

Courts repeatedly have rejected excess insurers' attempts to avoid their payment obligations through the imposition of such implausible purported exhaustion requirements, deeming them draconian for the policyholders and economically irrational for the insurers themselves.  (Doc. 30, Maximus' Brief in Support of its Motion to Dismiss, 9-11; hereafter, "Opening Br.")  Indeed, neither Defendant even attempts to demonstrate that its policy interpretation makes economic sense, or could conceivably be consistent with Maximus' reasonable expectations of coverage upon purchasing the policies.  Rather, Defendants contend that the result they advocate – no matter how irrational it may seem – must necessarily follow from their interpretation of the plain text of their insurance policies.

But a straightforward textual interpretation of Defendants' insurance policies undercuts their arguments, and the plain language of both the Axis and the Twin City policies supports Maximus' interpretation that below-limits settlements with underlying carriers satisfy the exhaustion provisions in the Defendants' policies.  Defendants can provide no coherent argument as to how their policy language should lead to a different result than that adopted in the dispositive opinion in *Zeig v. Massachusetts Bonding and Ins. Co.*, 23 F.2d 665 (2d Cir. 1928), which remains guiding precedent over 80 years after it was decided.

## I.  New York Law Applies in this Instance – But Even Under Virginia Law, Maximus' Motion to Dismiss Should be Granted

In its Opening Brief, Maximus demonstrated that New York law applies to this case. (Opening Br. at 6-8).  Defendants disagree and argue that Virginia law applies.  (Defendants' Br. at 5-6).  Significantly, Defendants do not dispute that their policies incorporated the provisions of the AISLIC policy (one of which was a mandatory mediation provision).  Nor do they dispute that the AISLIC policy includes a New York choice-of-law provision.  Instead, they rely on the policy wording stating that "[t]he dispute or differences considered by the mediators or arbitrators shall be governed by the internal laws of the State of New York."  (Defendants' Br. at 5 n.5).  Thus, their position is that the parties agreed to apply New York law *at the mediation stage*, but because "Maximus' mediations with Axis and Twin City have been concluded," Virginia law now applies.  (*Id.*).  But Defendants' position is illogical.  The purpose of mediation is to settle potential litigation.  It is pointless for parties to assume New York law applies in mediation, leading both to have generated position papers based upon New York law, unless New York law would apply to the potential litigation that the mediation is attempting to avoid. The better view of the choice-of-law provision is that the "dispute . . . considered by the

mediators" is the dispute that is currently being litigated.  That dispute is thus governed by New York law.[1]

In any event, Maximus agrees that the result in this case would be the same under Virginia law.  As in New York, "if disputed policy language is ambiguous and can be understood to have more than one meaning, we construe the language in favor of coverage and against the insurer."  *Va. Farm Bureau Mut. Ins. Co. v. Williams*, 677 S.E.2d 299, 302 (Va. 2009).[2]  Similarly, "[f]orfeitures of insurance policies are not favored."  *Gen. Fidelity Life Ins. Co. v. Bank of Callao*, 145 S.E.2d 212, 216 (Va. 1965).  Even more significantly, however, a court addressing the exhaustion issue under Virginia law explicitly has adopted the *Zeig* rule of exhaustion and expressly has *rejected* the holdings of two cases, *Comerica* and *Qualcomm*,[3] on which Defendants rely heavily.  *See Mills, L.P. v. Liberty Mut. Ins. Co.*, No. 09C-11-174, 2010 Del. Super. LEXIS 563, at *11, *19, *26 (Del. Super. Ct. Nov. 5, 2010) (discussed *infra*, at 9).  Importantly, Defendants cite no case – and Maximus is aware of none – in which a court applying Virginia law has rejected the long-standing and repeatedly applied *Zeig* rule.

---

[1] Moreover, the underlying Beazley excess policy also includes a New York choice-of-law provision.  Defendants assert that this choice-of-law provision does not apply because while the excess policies incorporate additional terms that "restrict" coverage, Maximus is attempting to "somehow expand coverage."  (Defendants' Br. at 6 n.5).  But Maximus is not attempting to "expand coverage"; rather, it is merely seeking to have the Defendants honor their policy obligations and is asserting that it is entitled to coverage based on the plain text of the excess policies.

[2] Defendants assert that "courts do <u>not</u> automatically interpret ambiguous policy language against an insurer."  (Defendants' Br. at 7 n.6).  But the Virginia Supreme Court and New York Court of Appeals have held to the contrary.  *See Williams*, 677 S.E.2d at 302; *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 908 N.E.2d 875, 877 (N.Y. 2009).  Defendants cite one Virginia Supreme Court case, *Aetna Cas. & Sur. Co. v. Fireguard Corp.*, 249 Va. 209 (Va. 1995), but that case is irrelevant.  It did not even involve an insurance policy; it involved a construction contract, and the insurer was involved only as the subrogee of its insured.

[3] *Comerica Inc. v. Zurich Am. Ins. Co.*, 498 F. Supp 2d 1019 (E.D. Mich. 2007); *Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*, 73 Cal. Rptr. 3d 770 (Cal. Ct. App. 2008).

Thus, although New York law applies to the excess policies issued by Axis and Twin City, the Court would reach the same result whether it applies New York or Virginia law.

## II.     Count I of Axis' Counterclaims Should be Dismissed

### A.     The plain text of the Axis policy supports Maximus' exhaustion position.

The Axis excess policy "appl[ies] only after all applicable Underlying Insurance . . . has been exhausted by actual payment under such Underlying Insurance."  (Doc. 1-3, Axis Excess Policy § I). As Maximus previously explained, there are multiple reasons why, under a straightforward textual interpretation of this provision, Maximus is entitled to coverage once the Axis policy layer has been reached.  *First*, the policy does not define the word "payment."  This is critical, because in *Zeig*, the most-followed case on this issue, the policy required that the primary insurance be "exhausted in the payment of claims to the full amount of the expressed limits."   23 F.2d at 666.   The *Zeig* court found that a below-limits settlement exhausted underlying coverage, on the ground that the term "payment" was ambiguous: "[t]here is no need of interpreting the word 'payment' as only relating to payment in cash.   It often is used as meaning the satisfaction of a claim by compromise, or in other ways."  *Id.*  This is precisely the definition of a settlement.  Given that *Zeig* was decided under New York law[4] and is by far the most-cited case on this issue, Maximus' reasonable expectation was that the word "payment" in the Axis policy would be construed to permit below-limits settlements to exhaust underlying

---

[4] Defendants observe that *Zeig* was decided prior to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  (Defendants' Br. at 9 n.7).  It is true that the decision predates *Erie*, but *Zeig* continues to be cited repeatedly in the post-*Erie* era.  Because "federal general common law" no longer exists, *Zeig*, which arose out of New York, is now regarded as representing New York law.  *See, e.g.*, *Fed. Ins. Co. v. Estate of Irving Gould*, No. 10 Civ. 1160, 2011 U.S. Dist. LEXIS 114000, at *12 (S.D.N.Y. Sept. 28, 2011) (characterizing *Zeig* as applying New York law); *U.S. Fid. & Guar. Co. v. Treadwell Corp.*, 58 F. Supp. 2d 77, 88 n.11 (S.D.N.Y. 1999) (same); *cf. Mayflower Hotel Stockholders Protective Comm. v. Mayflower Hotel Corp.*, 193 F.2d 666, 669 (D.C. Cir. 1951) (holding that a pre-*Erie* D.C. Circuit decision would be "construe[d] . . . as an application of the District of Columbia law").

5

coverage. (Opening Br. at 16-17). *Second*, the Axis policy does not define the extent of the "actual payment," and thus supports Maximus' view that actual payment of millions of dollars by the underlying insurers in settlements is sufficient for exhaustion. (*Id.* at 14-15). *Third*, the policy does not foreclose the "actual payment under such Underlying Insurance" from being a gap-filling payment by Maximus, and thus is consistent with Maximus' interpretation that payments by either the insured or the insurer are sufficient to satisfy the exhaustion provision. (*Id.* at 15-16).[5] Moreover, a straightforward textual interpretation of Section IV of the Axis policy, a provision dealing with the substitution of the Axis policy as primary insurance coverage, is also consistent with Maximus' position here. (*Id.* at 18 n.4).

Axis' response to these arguments is to ignore them. It makes no serious attempt to grapple directly with the text of its own insurance policy. Instead, Axis simply asserts, over and over again, that the term "actual payment" unambiguously requires payment of the entire limit of the underlying insurance policy. Nor does Axis attempt to respond to Maximus' textual analysis of Part IV of the policy ("Reduction or Exhaustion of Underlying Limits"); instead, Axis simply repeats that "[t]hese provisions confirm that an 'actual payment' is required to reduce or exhaust an underlying insurance policy." (Defendants' Br. at 18). But Axis' strategy of repeating and frequently underlining the words "actual payment" is simply not responsive to Maximus' argument, which is that the words "actual payment" do not require actual payment *by the*

---

[5] In response to this argument, Axis states: "Plainly any out-of-pocket payment Maximus made under its settlement of the Underlying Dispute (the only payment Maximus made was $40 million to Accenture and HHSC in 2008) is under the settlement agreement and is not "under the Underlying Insurance." (Defendants' Br. at 16). Axis misunderstands Maximus' argument. Maximus' payment makes up the difference between what the underlying insurers paid to settle their respective liability under their policies and the full policy limits of those policies. It therefore readily qualifies as a payment "under the Underlying Insurance."

*underlying insurers in cash of the entire limits of liability of the underlying policies.*  To interpret the phrase "actual payment" in that manner would require this Court to re-write the Axis policy.

Axis attempts to distinguish *Zeig* on one ground alone – that the *Zeig* policy used the word "payment" but the Axis policy uses the words "actual payment."  (Defendants' Br. at 17). This argument makes little sense.  As explained above, the premise of *Zeig* is that a settlement is a type of payment.  *Zeig*, 23 F.2d at 666.  It therefore follows that "when the settlement is signed and finalized, it would constitute an 'actual payment.'"  (Opening Br. at 16).  Axis maintains that this interpretation would make the word "actual" meaningless (Defendants' Br. at 17), but Axis is mistaken.  As Maximus explained in its Opening Brief, "actual" means "real," as opposed to "hypothetical" and "nominal."  (Opening Br. at 16).  Thus, if Maximus had entered into a tentative settlement that had not yet been finalized, the settlement would not yet have been "actual."  But when the settlement was finalized, it became an "actual payment."  Axis provides no coherent explanation for why a settlement is a "payment," but once the modifier "actual" is added, "payment" somehow requires payment in cash, by the insurer, of the entire limit of liability of the underlying policy.  To state the argument is to demonstrate its frailty.

B.     The governing case law supports Maximus' policy interpretation.

Rather than address Maximus' textual arguments, Axis premises its entire argument on a handful of cases construing policies involving the words "actual payment" to prohibit below-limits settlements with underlying insurers.  This authority is unavailing for several reasons.

First, each of the cases cited by Axis are non-binding cases from other jurisdictions applying the laws of different states.  Moreover, none of these decisions addressed (much less rejected) the detailed textual arguments made by Maximus in this case.  Rather, according to the various decisions, the policyholders in those cases simply asserted that settlement was sufficient

for exhaustion without making textual arguments based on the express and specific policy wording in the policies being examined by those courts.  *See, e.g.*, *Qualcomm*, 73 Cal. Rptr. 3d at 777 ("Qualcomm provides little analysis for a major premise of the above arguments: that the excess policy language is ambiguous in that it is susceptible to two or more reasonable constructions in view of the policy as a whole.").  Here, of course, Maximus contends that the excess policies *themselves* permit below-limits settlements with underlying insurers to satisfy the excess policies' exhaustion provisions.

Second, the Defendants' cases do not accurately characterize New York law.  Axis argues that "numerous courts have confirmed . . . that 'actual payment' requires payment by the underlying insurers of the full amount of their respective policy limits before the excess policy coverage attaches."  (Defendants' Br. at 11).  But *only one* case has considered a policy that included the words "actual payment" under New York law – and that case found in favor of the policyholder.  In *Pereira v. Cogan*, No. 04 Civ. 1134, 2006 U.S. Dist. LEXIS 49263 (S.D.N.Y. 2006), the policy stated: "The Company shall provide the **Insured** with insurance excess of the **Underlying Insurance** . . . only after all **Underlying Insurance** has been exhausted by actual payment of claims or losses thereunder."  *Id.* at *23-24 (emphasis in original).  The court found in favor of coverage pursuant to the analysis in *Zeig*.  *Id.* at *25-26.  The case applying Michigan law that Axis relies upon heavily – *Comerica* – did not even bother trying to distinguish *Pereira*, and instead rejected it as wrongly decided.  498 F. Supp. 2d at 1033.  Axis now distinguishes *Pereira* on the ground that "the issue to be resolved in that case involved the insolvency of an underlying insurer and so there was no discussion concerning a voluntary below-limit settlement and attempt to fill the gap."  (Defendants' Br. at 15-16 n.12).  But *Pereira* followed *Zeig*, which involved below-limits settlements with underlying insurers.   Moreover, Axis' attempted

distinction of *Pereira* falls flat.   There is no reason the phrase "actual payment" *would* be satisfied when an underlying insurer is insolvent – and therefore concededly made *no* payments to the policyholder in cash – but *would not* be satisfied when an underlying insurer *did* make an actual payment in cash pursuant to a settlement agreement.   Given that the case under New York law construing "actual payment" has found in favor of the policyholder, this Court should reject the *Comerica* court's invitation to ignore governing New York authority, as Defendants urge.

Third, Axis' cases also do not accurately characterize Virginia law.   In *Mills*, the excess policy stated: "this Policy only provides coverage when the Underlying Limit of Liability is exhausted by reason of the insurers of the Underlying Policies paying or being held liable to pay in legal currency the full amount of the Underlying Limit of Liability as loss."   2010 Del. Super. LEXIS 563, at *5 n.1.   Significantly, this policy – which both refers to a payment "in legal currency" and a payment of "the full amount of the Underlying Limit of Liability" – is more favorable to the insurer than the Axis policy, which requires only "actual payment under such Underlying Insurance."   There, as here, the excess insurer argued that the policy prohibited below-limits settlements.   Yet the *Mills* court ruled in favor of coverage.   Significantly, the court concluded that "the majority of courts . . . hold that settlement with an underlying carrier functionally exhausts that carrier's coverage," and held that that *Comerica* and *Qualcomm* are "contrary to . . . *Zeig*" and thus contrary to Delaware law.   *Id.* at *19, *26 (quotation marks omitted).   The court also held that "because Delaware's approach to exhaustion clauses is in the mainstream and correct, . . . Virginia would adopt the same approach."   *Id.* at *12.   The court powerfully explained that "the insurance company is only relying on the exhaustion clause because it could defeat coverage, thereby allowing the insurance company to avoid paying

benefits that it otherwise owes to its customer for a covered loss." *Id.* at *30.  Precisely the same

reasoning applies to Defendants' coverage-defeating arguments here.

Fourth, Axis relies heavily on *Great Am. Ins. Co. v. Bally Total Fitness Holding Corp.*,

No. 06 C 4554, 2010 U.S. Dist. LEXIS 61553 (N.D. Ill. June 22, 2010), but neglects to mention

that this case likely is no longer good law.  After *Great American* was decided, the Seventh

Circuit decided *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653 (7th Cir. 2010).  There,

the excess policy required that "the limits of 'underlying insurance'" be "exhausted by payment

of claims."  *Id.* at 658.  The district court had held that this policy required payment by the

underlying insurers of the entire limits of liability of the underlying policies.  2009 U.S. Dist.

LEXIS 88697 (S.D. Ind. 2009).  But the Seventh Circuit reversed, stating:

> While the umbrella agreement does state that [an underlying] policy is exhausted
> when the policy limit has been completely expended, it does not clearly provide that
> the full limit must be paid out by the [underlying] insurer alone.  As such, the policy
> is ambiguous and susceptible to the meaning put forth by [the policyholder]—that
> [an underlying] policy can be exhausted when an insured and [an underlying] insurer
> enter into a settlement agreement where the primary insurer will pay a large
> percentage of the total limit and the insured takes responsibility for the remainder.

*Trinity Homes*, 629 F.3d at 658.  Relying on *Zeig*, the Seventh Circuit also noted that its

interpretation would promote settlements and that its "construction of the policy neither has a

punitive effect on [the insurer] nor does it alter its underwriting considerations."  *Id.* at 659.

Similarly, this Court should not follow the now questionable opinion in *Great American*.

Finally, even if the cases cited by Axis constituted binding authority, Maximus would

still prevail for a simple reason:  the Maximus policy contains fundamentally different provisions

than those examined in the cases cited by Axis.  As explained in Maximus' Opening Brief, it is

not enough for a policy to use the words "actual payment"; the policy must specify *what the*

*actual payment must be*.  The policies interpreted in the cases cited by Axis almost invariably

contain more specific language than in the Axis policy itself – not only that "actual payment" is required, but actual payment *in cash by the carrier of the entire limit of liability* of the underlying policy. (Opening Br. at 14-15, 18 n.4). Axis has no response to this critical distinction.

There is an even more fundamental difference between the Axis policy and those policies in the cases asserted by Axis, which is dispositive in this instance. The Axis policy includes the following provision: "If any Underlying Insurer fails to make payments under such Underlying Insurance for *any reason whatsoever*, including without limitation the insolvency of such Underlying Insurer, then the Insureds shall be deemed to have retained any such amounts which are not so paid." (Doc. 1-3, Axis Excess Policy § V.C (emphasis added)). None of the cases cited by Axis mentioned any policy provisions resembling this wording.

Axis invokes a New York state trial court decision, applying Illinois law, to support its position. *JPMorgan Chase & Co. v. Indian Harbor Ins. Co.*, No. 603766/08, 2011 N.Y. Misc. LEXIS 2767 (N.Y. Sup. Ct. 2011), *appeal pending*, No. 6461 (argued Dec. 7, 2011). Based on this case, Axis asserts that "[i]n *JPMorgan*, the Lumberman's maintenance clause was identical to the Axis clause here." (Defendants' Br. at 20 n.14). But Axis is mistaken: *JPMorgan* contains no mention of that quoted phrase or anything like it.[6]

---

[6]  Axis may be referring to the fact that the *last sentence* in § V.C of the Axis policy – "If the Underlying Insurance is not so maintained, the Insurer shall not be liable under this Policy to a greater extent than it would have been had such Underlying Insurance been so maintained" – resembles a provision in *JPMorgan* – "Failure of the Insured to Comply with the foregoing shall not Invalidate this policy, but in the event of such failure the Underwriters shall be liable only to the extent that it would have been liable had the Insured complied therewith." *JPMorgan*, 2011 N.Y. Misc. LEXIS 2767, at *22-23. But the policy discussed in *JPMorgan* simply *does not* contain a provision stating that "If any Underlying Insurer fails to make payments under such Underlying Insurance for any reason whatsoever, including without limitation the insolvency of such Underlying Insurer, then the Insureds shall be deemed to have retained any such amounts which are not so paid." (Doc. 1-3, Axis Excess Policy § V.C).

The presence of this provision in Axis' policy is fatal to its efforts to escape its payment obligations here.  Axis' position in this case is that, because the underlying insurers made partial – but not full – payments of their policies' limits of liability in settling with Maximus, they did *not* make "actual payment under such Underlying Insurance" within the meaning of Axis Excess Policy § I.  But if Axis' contention is true, then it must *also* be true that the "Underlying Insurer fail[ed] to make payments under such Underlying Insurance for any reason whatsoever," pursuant to Axis Excess Policy § V.C.  And the Axis Excess Policy states the consequences of such circumstances:  "the Insureds shall be deemed to have retained any such amounts which are not so paid."  *Id.*  This provision strongly supports and is perfectly consistent with Maximus' coverage position: Maximus shall be deemed to have retained the unpaid amounts under the underlying policies, and Axis is responsible only for damages in excess of $60 million.  If Axis' interpretation of the policy was correct, then the policy would have instead read as follows:

> If any Underlying Insurer fails to make payments under such Underlying Insurance for any reason whatsoever, including without limitation the insolvency of such Underlying Insurer, then the Insureds shall be deemed to have *waived their right to any insurance under the Excess Policy*.

But the Axis policy does not say that, and the Court should not allow Axis to alter the policy to suit its needs or seek this Court's assistance in re-writing the policy after the fact.

In response, Axis asserts that this provision means only that "any amounts not paid by the underlying insurer 'shall be deemed to have [been] retained' by the insured – i.e., the insured will be deemed to be self-insured for those amounts," but that "[n]othing in this provision broadens the circumstances under which the Axis Excess Policy will attach."  (Defendants' Br. at 19).  But this response both makes no sense and misses the point.  The provision is inexplicable under Axis' theory.  The parties would not have agreed upon a provision stating that Maximus would be self-insured only for the underlying limits of liability if the parties intended Maximus

to waive *all* excess coverage after settling with underlying insurers – as Axis contends.  "An insurance policy must be read as a whole with effect given to every provision," and a provision must be "read in the context of the entire policy" to determine whether "the policy as a whole is ambiguous."  *Tozzi v. Long Island R.R.*, 170 Misc. 2d 606, 614-15 (N.Y. Sup. Ct. 1996).  Here, a review of "the policy as a whole" demonstrates that Axis' policy interpretation cannot possibly be correct, and that Maximus' interpretation is both reasonable and commercially rational.

      C.    <u>Forgiven invoices and service credits are "actual payments"</u>

Finally, Axis inserts an argument that is better left for Axis' promised motion for summary judgment and that does not belong in a dispute over the dismissal of Count I of the Defendants' counterclaims:  that forgiven invoices and service credits are not "actual payments." (Defendants' Br. at 13-15).  Axis asserted this position in *Count II* of its Counterclaims.  (Doc. 24, Axis Counterclaims ¶ 58 (arguing that forgiven invoices and service credits are not amounts that Maximus was "legally obligated to pay")).  Axis moved for a continuance so it could make this argument in a motion for summary judgment alongside its opposition to Maximus' Motion to Dismiss (Doc. 34), but Axis' motion for a continuance was denied (Doc. 41).  It should not be allowed to distract this Court with references to a separate affirmative defense asserted through a separate Counterclaim on which it bears the burden of proof in the form of an opposition to a motion to dismiss the so-called "exhaustion" defense.

In an abundance of caution, however, Maximus will address this argument briefly to demonstrate that it has no place in this case at all.  In the underlying settlement with HHSC and Accenture, Maximus agreed: (a) In lieu of cash payment to perform $10 million of work for HHSC, and (b) to forgo the collection of cash payment for $16.7 million in invoices for work that HHSC already approved for payment.  These service credits and forgiven invoices were

unquestionably valuable consideration and fall within the definition of "payment," which includes "performance of an obligation by the delivery of money *or some other valuable thing* accepted in partial or full discharge of the obligation."   Black's Law Dictionary (9th ed. 2009) (emphasis added).   Not surprisingly, courts repeatedly have characterized such consideration as "payments."   *See, e.g.*, *Swanson v. Brewster*, 784 N.W.2d 264, 275 (Minn. 2010) ("[T]he ordinary and plain meaning of the words 'pay' and 'payment' include the idea of discharging or satisfying a debt"); *Earth Elements, Inc. v. Nat'l Am. Ins. Co. of Cal.*, 48 Cal. Rptr. 2d 399, 402 (Cal. Ct. App. 1996) ("There is no analytical distinction between surrendering money in exchange for a settlement and exchanging any other item of value.").   *See also TOL Aviation, Inc. v. Intercargo Ins. Co.*, No. L-05-1308, 2006 Ohio App. LEXIS 6008, at *32 (Ohio Ct. App. Nov. 17, 2006) (calculation of damages for purposes of insurance coverage included the amount of "invoices that were forgiven"); *Rite Aid Corp. v. Liberty Mut. Fire Ins.,* No. 1:CV-03-1801, 2006 U.S. Dist. LEXIS 57094, at *11 (M.D. Pa. Aug. 14, 2006) ($7.5 million in loan forgiveness constitutes damages for purposes of insurance coverage). The same reasoning applies here.

Axis' cases fail to undermine this common-sense argument.  Axis cites the unpublished decision in *OneBeacon Ins. Co. v. Metro Ready-Mix, Inc.*, 242 Fed. Appx. 936 (4th Cir. 2007). But in that case, the mention of "actual payments" was so tangential that it cannot even fairly be called a dictum.[7]  Axis also exhumes the case of *Bodine v. Exch. Fire Ins. Co.*, 51 N.Y. 117 (1872), a case not cited by any New York court since 1958.  *Bodine* did not hold that "actual payment" required "payment in cash," as Axis claims.  (Defendants' Br. at 14).  It actually held

---

[7]  The court made a passing reference in the facts section of its opinion to the fact that there was no "actual payment" because the parties had forgiven debts.  *OneBeacon*, 242 Fed. Appx. at 938. But this was completely irrelevant to the legal issues in the case, which addressed (a) the definition of an "accident" in a policy, and (b) whether estoppel could be used to create an insurance contract.  Moreover, this unpublished decision was decided under Maryland law.

that an insurance agent and his son were authorized to waive a prepayment requirement on the insurance company's behalf. *Bodine*, 51 N.Y. at 122-23. Indeed, New York courts have rejected similar arguments to the one now made by Axis, when made by Axis in other cases. *E.g.*, *In re Axis Reinsurance Co. Refco Related Ins. Litig.*, No. 07-CV-07924-JSR, 2010 U.S. Dist. LEXIS 33377, at *33-35 (S.D.N.Y. March 7, 2010) (finding the phrase "'legally obligated to pay' . . . ambiguous as applied to settlements requiring  court approval," and rejecting Axis' argument that, as a matter of law, its interpretation of the provision was even in good faith). The court should likewise reject Axis' argument here.

### III.    Count I of Twin City's Counterclaims Should be Dismissed

As explained in Maximus' Opening Brief, the plain text of the Twin City policy entitles Maximus to a ruling dismissing Count I of Twin City's counterclaims. The policy states that it will apply "only after the Primary and Underlying Excess Insurers shall have paid the full amount of their respective liability." (Opening Br. at 20). Because the underlying insurers have "paid the full amount of their respective liability," those policies are now exhausted. *Id.* at 20-22. Significantly, the Twin City policy never states that it requires full payment of the entire *limits of liability* of the underlying policies – even though the words "limit of liability" are used elsewhere in the policy. *Id.* at 20-21. If Twin City had wanted to require exhaustion of underlying policies through payment in cash by the insurer of its entire limits of liability, Twin City knew how to incorporate such a requirement. It did not do so.

Twin City responds by asserting that "[t]he Twin City Excess Policy . . . expressly states that coverage may be available 'only after' each of four underlying insurers 'shall have paid' the 'full amount' of their respective 'total limits of liability.'" (Defendants' Br. at 21). But the policy does not say that. The first three quoted phrases in the sentence above appear in Section

II.A of the policy, but the phrase "total limits of liability" does not – it appears only in Section I of the policy. Twin City therefore has cobbled together a new condition in the policy that did not appear in the policy issued to Maximus. Twin City may have *wanted* the phrase "total limits of liability" to appear in Section II.A rather than Section I, but the time to have included that phrase would have been while drafting the policy, not by misquoting its own policy to the Court.[8]

Moreover, the Twin City policy requires that the underlying insurers "shall have paid the full amount of their respective liability." It does not require that the payment be made in cash, as opposed to in the form of a settlement. This is a dispositive point, because it was the very foundation for *Zeig*. There the court held "[t]here is no need of interpreting the word 'payment' as only relating to payment in cash. It often is used as meaning the satisfaction of a claim by compromise, or in other ways." *Zeig*, 23 F.2d at 666. Twin City's policy is thus indistinguishable from the policy in *Zeig*, and the reasonable expectations of the parties would have been to construe the Twin City policy in light of *Zeig*. (Opening Br. at 22-23). Beyond the bare assertion that the policy in *Zeig* was "ambiguous" (Defendants' Br. at 26), Twin City does not even attempt to distinguish its policy from the policy held to afford coverage in *Zeig*.

Indeed, it also would have been simple for Twin City to have inserted the phrase "in cash" when drafting its policy. That is exactly what one of the insurers did with its policy reviewed by the court in *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367 (5th Cir. 2011) – a case that Twin City quotes completely out of context. Twin City states that "one of the four excess

---

[8]  Twin City takes the position that if Maximus waived its Axis coverage, then it waived its Twin City coverage a fortiori. (Defendants' Br. at 20). That is not true. Twin City Policy § III.A states that the Twin City policy shall not provide "broader coverage" than the underlying excess policies – i.e., will not cover a class of damages that the underlying policies do not cover. It does not import the underlying policies' exhaustion provisions. Indeed, it is implausible that the Twin City policy includes *two different* exhaustion provisions, worded slightly differently, one written by Axis and one written by Twin City.

policies at issue in *Citigroup* provided for coverage only after all of the underlying insurers paid 'the full amount of their respective liabilities.'" (Defendants' Br. at 21). But that policy actually required that "all Underlying Insurance carriers have paid *in cash* the full amount of their respective liabilities." *Citigroup*, 649 F.3d at 372. There is no doubt that Twin City wishes in hindsight that it had included the phrase "in cash" in its policy, but it did not, and should not be permitted to revise the policy now in an attempt to avoid its coverage obligations.

Twin City also relies on the New York state trial court decision applying Illinois law in *JPMorgan*, which is currently on appeal. (Defendants' Br. at 21-22). But as Twin City acknowledges, the policy there, unlike the one here, required the underlying insurers to have "*duly admitted liability and* [to] have paid the full amount of their respective liability." 2011 N.Y. Misc. LEXIS 2767, at *11. Twin City professes to being confused why the phrase "admitted liability" would be relevant (Defendants' Br. at 22 n.16), but the reason is obvious: Insurance companies typically *do not* admit fault in settlement agreements – as was the case in all three of the settlements Maximus reached with the underlying insurers in this case. Thus, the policy provision in *JPMorgan* requiring the underlying insurers to have "admitted liability" strengthened the excess insurer's argument that below-limits settlements were insufficient for exhaustion. But there is no such "admitting liability" requirement in the Twin City policy.

Twin City also relies on other provisions of its policy to support its efforts to escape exposure, but these arguments lack merit. Twin City first contends that Maximus' reading "utterly ignores the immediately preceding sentence in the 'Insuring Agreement' of the Twin City Excess Policy." (Defendants' Br. at 22). But Maximus' textual argument is actually *enhanced* by that immediately preceding sentence. The preceding sentence, Section I of the policy, states: "[Twin City] shall provide [Maximus] with insurance during the Policy Period

which is in excess of the total limits of liability and any retention/deductible under all Underlying Insurance . . . whether collectible or not."  That provision straightforwardly defines the damages that Maximus must incur before the policy is triggered.  If Maximus incurs damages "in excess of *the total limits of liability* and any retention/deductible under all Underlying Insurance" – i.e., damages in excess of $70 million – then Twin City "shall provide" Maximus with insurance for such damages.  That is precisely what Maximus seeks in this case – coverage from Twin City only for its damages in excess of $70 million.  And Section I even specifies that Maximus may recover whether the underlying payments are "collectible or not" – further supporting Maximus' argument that payment in cash is not required.  The contrast between Section I, which uses the phrase "limits of liability" to set forth the insurable damages, and Section II, which uses the phrase "their respective liability" to set forth the exhaustion requirements, is precisely the reason the Court should hold that the phrase "their respective liability" permits Maximus to exhaust the underlying policies through settlements with the underlying insurers for amounts less than their full policy limits.

Twin City next accuses Maximus of "brazenly ignor[ing]" the policy language in Section II.A immediately following the words "respective liability."  (Defendants' Br. at 23).  This accusation is equally perplexing.  The provision cited by Twin City states that Maximus is entitled to coverage if "[Maximus] shall have paid the full amount of such liability due to the financial insolvency of an insurer of the Underlying Insurance."  Section II.A of the policy thus contemplates two situations: (a) The situation when the underlying insurers are solvent and "shall have paid" Maximus, and (b) The situation where the underlying insurers are insolvent and Maximus "shall have paid."  Maximus' position is simply that this case falls within Situation (a), because the underlying insurers paid Maximus under the settlement agreement.  Nothing in

the provision prohibits such an interpretation, and it is entirely reasonable. Twin City's assertion that "the Twin City Excess Policy directly contemplates a single situation in which Maximus properly could exhaust its underlying coverage by itself paying in the place of the underlying insurers," (Defendants' Br. at 23), ignores the construction of the policy provisions and has no support whatsoever in the actual language of the policy.

The "maintenance" provision of the Twin City policy further supports Maximus' position.  As Maximus explained in its Opening Brief, it would be bizarre if Maximus could access the Twin City policy if it stopped paying the underlying policy premiums altogether, but would be barred from accessing the Twin City policy if it settled with the underlying insurers for one dollar less than the policy limits.  (Opening Br. at 22).  Twin City cannot provide any explanation for why such a result makes sense; it simply asserts that the provision does not apply here because Maximus settled with the underlying insurers for amounts less than their policy limits.  (Defendants' Br. at 24-25).  But Twin City misses the point, which is that "a contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties."  *Greenwich Capital Fin. Prods., Inc. v. Negrin*, 74 A.D. 3d 413, 415 (N.Y. App. Div. 1st Dep't 2010) (quotation marks omitted).[9]  Twin City's policy interpretation would result in just such an absurd outcome.

---

[9] Twin City alleges that similar maintenance language appears in *Citigroup*, *Qualcomm*, *Bally*, and *JPMorgan*.  (Defendants' Br. at 26).  But *Citigroup* and *Bally* make no mention of any "maintenance of underlying insurance" language.  In *Qualcomm*, the maintenance clause did *not* authorize coverage when the policyholder failed to pay the underlying premiums.  73 Cal. Rptr. 3d at 773-74.  And the court expressly stated that it "need not decide whether the excess policy's maintenance clause independently compels a conclusion that excess coverage is precluded."  *Id.* at 785.  *JPMorgan* only stated that the maintenance provision "deal[t] with different underlying factual situations."  *JPMorgan*, 2011 N.Y. Misc. LEXIS 2767, at *23.  This cryptic analysis fails to undermine Maximus' argument here.

IV.     **The Court should Grant Maximus' Motion to Dismiss in View of the Practical Considerations of** *Zeig*

Defendants conclude their opposition with a wholly unsuccessful response to the practical and policy arguments identified in *Zeig* and reiterated by numerous courts thereafter. (Defendants' Br. at 26-29).   Maximus pointed out that Defendants' position would require parties to waste the legal system's time pursuing litigation rather than enter into settlements. (Opening Br. at 10-11).  Defendants do not disagree.  Maximus pointed out that Defendants have no logical economic rationale for insisting on such pointless litigation.  *Id.*  Defendants do not disagree.  Defendants' sole response is a paean to the virtues of following the plain text of insurance policies.  But as Maximus has shown, Defendants' policies do not impose any such conditions – no matter how hard they try to revise their policy language to avoid coverage.

Defendants' policy language simply does not overcome *Zeig*.   Both policies are materially more favorable to Maximus than was the policy in *Zeig*.  (Opening Br. at 18-19, 22-23).   In light of *Zeig*, and the Defendants' policy language, Maximus' expectation was that it would be permitted to settle with underlying insurers and proceed to access the next layers of coverage, and that expectation was entirely reasonable.  Defendants have no response as to why Maximus could possibly have expected a court to disregard that long-held precedent.

Maximus should not be robbed of all coverage on the basis of a policy interpretation that is contrary to the policy text, longstanding precedent, and common sense.  Maximus' Motion to Dismiss Count I of both Defendants' Counterclaims should therefore be granted.

CONCLUSION

For the reasons argued above and in Maximus' Opening Brief, the Court should dismiss

Count I of both Defendants' counterclaims.

Dated: February 1, 2012.

/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL:   (703) 549-5354
FAX:   (703) 549-2604
EMAIL: craig.reilly@ccreillylaw.com
*Counsel for plaintiff Maximus, Inc.*

*Of Counsel for plaintiff Maximus, Inc.:*

Michael K. Lowman (VSB # 41663)
mlowman@jenner.com
Matthew L. Jacobs (admitted *pro hac vice*)
mjacobs@jenner.com
JENNER & BLOCK LLP
1099 New York Ave., N.W., Suite 900
Washington, D.C. 20001
Phone:  202-639-6000
Fax:  202-639-6066

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of February, 2012, a true and correct copy of the foregoing pleading or paper was served using the Court's CM/ECF system, with electronic notification of such filing to the following counsel of record:

Charles B. Wayne
charles.wayne@dlapiper.com
DLA PIPER LLP (US)
500 8th Street, N.W.
Washington, D.C. 20004
(202) 799-4253
(202) 799-5253 (fax)
*Counsel for defendant Twin City Fire
Insurance Co.*


*Of Counsel:*

Joseph G. Finnerty III
    (admitted *pro hac vice*)
Eric S. Connuck (admitted *pro hac vice*)
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500
*Counsel for defendant Twin City Fire
Insurance Co.*

Stephen R. Pickard
115 Oronoco Street
Alexandria, VA 22314
(703) 836-3505
(703) 836-3558
srpickard@aol.com
*Counsel for defendant Axis Reinsurance Co.*


*Of Counsel:*

SATTERLEE STEPHENS BURKE
    & BURKE LLP
James F. Rittinger (admitted *pro hac vice*)
Justin E. Klein (admitted *pro hac vice*)
230 Park Avenue
New York, New York 10169
(212) 818-9200 (Phone)
(212) 818-9606 (Fax)
*Counsel for defendant Axis Reinsurance Co.*


/s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL:   (703) 549-5354
FAX:   (703) 549-2604
EMAIL: craig.reilly@ccreillylaw.com
*Counsel for plaintiff Maximus, Inc.*