UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MAXIMUS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TWIN CITY FIRE INSURANCE CO. )<br>and AXIS REINSURANCE CO., )<br>)<br>Defendants. )<br>) | No. 1:11cv1231 (LMB/TRJ) |

### DECLARATION OF JENNIFER HAAS

I, Jennifer Haas, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Director of Finance and Contracts Administration at Maximus, Inc. I have served in that position since January 2011. Prior to my current position, I was the Finance Director responsible for the Texas projects with HHSC and held that position since July 2005. In that role I was the person responsible for all financial transactions between Maximus and Accenture and then between Maximus and HHSC. My roles have included forecasting, budgeting, accounts payable, accounts receivable and overall financial performance reporting of the projects.

2. On September 8, 2010, I attended a meeting with Larry Fisher, a supervisor at HHSC who is responsible for conducting the review of Accenture invoices. The purpose of the meeting was to discuss HHSC's approval of Accenture invoices and to help Maximus confirm the value of approved Maximus invoices that were forgiven as part of the settlement between

HHSC, Accenture, and Maximus (the "Forgiven Invoices"). At the meeting, Mr. Fisher told us that he and members of his department reviewed the outstanding and unpaid Accenture invoices, in some cases conducting audits of the submissions. The purpose of the review was to determine which Accenture work had been approved for payment by HHSC. HHSC would have paid for this work had it not been for the alleged damages incurred by HHSC in connection with the project; thus, HHSC considered the unpaid invoices that were approved to be an offset to the damages it allegedly incurred. In doing so, HHSC prepared an Excel spreadsheet, that summarized each outstanding Accenture invoice, a general description of the work included in that invoice, the amount, if any, of the invoice that was acceptable and entitled to credit, and a column describing in summary fashion the reason for the HHSC determination (the "HHSC Spreadsheet"). At this meeting, Mr. Fisher provided us with a copy of the HHSC Spreadsheet. A true and accurate copy of the HHSC Spreadsheet is attached as Exhibits A-1 through A-4 to my declaration, representing the four "tabs" of the spreadsheet.

3. After the meeting, I conducted an analysis of the HHSC spreadsheet to determine the amount of Maximus work associated with the Forgiven Invoices that had been approved by HHSC. The first step of my analysis was to match the Accenture invoices identified in the spreadsheet with the forgiven Maximus invoices. To do this, I analyzed the descriptions of the Accenture invoices identified in the spreadsheet, and matched those descriptions to the corresponding Maximus invoices.[1] For example, at row 114 of Tab C of the HHSC spreadsheet ("TAA Summary of all Invoices"), attached as Exhibit A-3 of my declaration, Accenture Invoice 1000114107 is identified as "Integrated Eligibility Fixed Fees (Dec 06)." Based on my personal knowledge of the Maximus invoices, I know that the Maximus invoice for December 2006

---

[1] I was able to do so as I had personal knowledge of Maximus' scope of work on the Project, as well as work being performed by the other parties on the project.

Integrated Eligibility Fixed Fees was Maximus invoice 14IE, attached as Exhibit B of my declaration. Likewise, at row 260 of Exhibit A-3, Accenture Invoice 1000108360 is identified as "Chip IE Variable Fees (Sept)," and is dated November 28, 2006. Based on my personal knowledge of the Maximus invoices, I know that the Maximus invoice for October 2006 CHIP IE variable fees was Maximus invoice 11B IE, attached as Exhibit C of my declaration.

  4. My next step was to determine the amount of Maximus work that had been approved. To do this, I measured the proportion of Accenture work that had been approved by HHSC for each invoice. I did so by looking to Tab B of the HHSC spreadsheet ("TAA Settlement"), attached as Exhibit A-2 to my Declaration. In some cases, Accenture invoices were completely approved, and so it was therefore necessarily the case that all corresponding Maximus work had been approved. For instance, in the above example, Row 148 of Exhibit A-2 states that 100% of the Accenture invoice for "Integrated Eligibility Fixed Fees (Dec 06)" had been approved, so 100% of the corresponding Maximus invoice (14 IE) had been approved as well. I repeated this analysis for all Maximus invoice corresponding to an Accenture invoice that had been completely approved. The total value of the Maximus work corresponding to the Accenture invoices that were completely approved was $6,100,666.53.

  5. In other cases, Accenture invoices had been partially approved. For example, in the above example, Row 121 of Exhibit A-2 states that 74.07% of the Accenture invoice for "Chip IE Variable Fees (Sept)" had been approved. I then concluded that 74.07% of the corresponding Maximus invoice (11B IE) had been approved. I followed this approach in order to be conservative. It may have been the case with these invoices that none of the work Maximus invoiced in a given invoice was rejected. I repeated this analysis for all Maximus

3

invoice corresponding to an Accenture invoice that had been partially approved. The total value of the approved Maximus work corresponding to these Accenture invoices was $10,398,646.10.

6. For each forgiven Maximus invoice that could not be directly tied to a description of an Accenture invoice on the "Summary of all Invoices" tab, I assumed Maximus would recover nothing. I did so in order to ensure that my analysis was a conservative estimate of the amount of forgiven invoices that corresponded to work approved by HHSC. The combined value of these invoices exceeded $1.5 million. If I had access the original Accenture Invoices I would be able to better test this assumption, and the amount of approved Maximus work might increase.

7. A summary of my work appears at Exhibit D. Each row lists a Maximus invoice and its amount; the corresponding Accenture invoice and its amount; the percentage of Accenture work that was approved by HHSC; and the corresponding percentage of Maximus work that constitutes recoverable damages. As stated at cell L94 of the spreadsheet, the total amount of Maximus work in the forgiven invoices – corresponding to both the completely-approved and partially-approved Accenture invoices – was $16,499,312.65.

8. It was also explained to me at the meeting with Mr. Fisher that Tab D of the HHSC spreadsheet ("Retro Recovery"), attached as Exhibit A-4 of my Declaration, was a list of items that Accenture believed should be credited to Accenture on the basis that HHSC received benefit but the work had not been invoiced. As that spreadsheet states at row 91, the total sought by Accenture during the negotiations was $18,216,058 but HHSC agreed to grant a credit of only $4,964,758. I reviewed the descriptions in this spreadsheet and concluded that the majority of the items did not pertain to Maximus; only $277,691 of that total was attributable to Maximus

work.  I have included details of that calculation on the spreadsheet at rows 98-101 of Exhibit D.  Thus, the total amount of approved Maximus work was $16,777,004.03.

9. I am personally aware that Maximus, as part of its Settlement Agreement with HHSC, agreed to provide $10 million in Service Credits to HHSC.  I am personally aware that Maximus entered into four Task Orders in which it performs work credited against those Service Credits.  None of the work under the four Task Orders was for the repair or correction of work that HHSC claimed was deficient on the project.  It is my personal knowledge that the following amounts have been paid by Maximus and credited against the Service Credits, as of February 7, 2012:

- Task Order 1, including amendments (subject to service credits): $3,473,527.41 has been billed; $765,220.59 is committed

- Task Order 2 (subject to service credits): $84,763.07 has been billed; no amount remains committed

- Task Order 3 (subject to service credits): $1,146,971.96 has been billed; $1,433,153.04 remains committed;

- Task Order 4 (subject to service credits): $2,428,616.23 has been billed; $71,383.77 remains committed;

- Maximus also issued a $315,000 check to HHSC, which exhausted $315,000 from the service credits.

10. I am unaware of any evidence that Maximus intentionally committed errors on the Project.  I am also unaware of any evidence or allegation that Maximus had any kind of incentive to perform poorly on the Project.

11. To my knowledge, all the work Maximus performed on the Project was performed in good faith at all times.

February 27, 2012                                    *[signature]*
                                                     Jennifer Haas

CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of February 2012, a true and correct copy of the foregoing pleading or paper was served using the Court's CM/ECF system, with electronic notification of such filing to the following counsel of record:

| | |
|---|---|
| Charles B. Wayne<br>charles.wayne@dlapiper.com<br>DLA PIPER LLP (US)<br>500 8th Street, N.W.<br>Washington, D.C. 20004<br>(202) 799-4253<br>(202) 799-5253 (fax)<br>*Counsel for defendant Twin City Fire Insurance Co.* | Stephen R. Pickard<br>115 Oronoco Street<br>Alexandria, VA 22314<br>(703) 836-3505<br>(703) 836-3558<br>srpickard@aol.com<br>*Counsel for defendant Axis Reinsurance Co.* |
| *Of Counsel:*<br>Joseph G. Finnerty III<br>(admitted *pro hac vice*)<br>Eric S. Connuck (admitted *pro hac vice*)<br>DLA PIPER LLP (US)<br>1251 Avenue of the Americas<br>New York, New York 10020<br>(212) 335-4500<br>*Counsel for defendant Twin City Fire Insurance Co.* | *Of Counsel:*<br>James F. Rittinger (admitted *pro hac vice*)<br>Justin E. Klein (admitted *pro hac vice*)<br>SATTERLEE STEPHENS BURKE<br>& BURKE LLP<br>230 Park Avenue<br>New York, New York 10169<br>(212) 818-9200 (Phone)<br>(212) 818-9606 (Fax)<br>*Counsel for defendant Axis Reinsurance Co.* |

/s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL:   (703) 549-5354
FAX:   (703) 549-2604
EMAIL: craig.reilly@ccreillylaw.com
*Counsel for plaintiff Maximus, Inc.*