IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
MAR 1 2 2012
CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

MAXIMUS, INC.,                     )
                                   )
          Plaintiff,               )
                                   )
     v.                            )     1:11cv1231 (LMB/TRJ)
                                   )
TWIN CITY FIRE INSURANCE CO.,      )
     et al.,                       )
                                   )
          Defendants.              )

## MEMORANDUM OPINION

Plaintiff Maximus, Inc. has sued defendant Axis Reinsurance Company ("Axis"), seeking payment of insurance claims under defendant's excess coverage policy (the "Axis Policy").[1] Before the Court is plaintiff's motion to dismiss Count I of Axis' counterclaim, in which Axis seeks a declaration that coverage under its excess insurance policy has not been triggered because plaintiff has not exhausted its coverage with lower-tier insurance carriers. For the reasons discussed below, plaintiff's Motion to Dismiss will be granted.

---

[1] Plaintiff originally included Twin City Fire Insurance Company ("Twin City"), the holder of Maximus' top-tier excess coverage policy, in this litigation and moved to dismiss Count I of Twin City's counterclaim; however, after oral argument on the motion, Maximus and Twin City reached a settlement agreement, leaving only Axis' counterclaim at issue.

## I.   BACKGROUND

A. The Insurance Policies at Issue

Maximus holds professional liability insurance policies with five companies, which are responsible for reimbursing damages in specific ranges once Maximus has satisfied the first $10 million of damages for which it is self-insured.  American International Specialty Lines Insurance Company ("AISLIC") provides Maximus with $20 million in primary coverage in the $10 to $30 million range; Executive Risk Indemnity, Inc. ("Executive Risk") provides $10 million in excess coverage for damages ranging from $30 to $40 million; Syndicates 2623/623 at Lloyd's ("Beazley") provides $20 million in excess coverage for damages ranging from $40 to $60 million; Axis provides $10 million in excess coverage for damages in the $60 to $70 million range; and the last excess carrier, Twin City, provides $10 million in excess coverage for damages exceeding $70 million.

The AISLIC primary policy provides coverage for "amounts...[Maximus is]...legally obligated to pay as damages arising from a claim...for wrongful acts."  Compl. ¶ 26; AISLIC Policy § 2.  "Damages" is defined as "any amount that any insured shall be legally required to pay because of judgments, arbitration awards or the like rendered against an insured, or for settlements negotiated by us or by [Maximus]."  Compl. ¶ 27; AISLIC Policy § 3(i).

The Axis Policy, which "adopt[s] the terms and conditions of coverage in the Primary Policy issued by AISLIC, except where otherwise noted" in the Axis Policy, is triggered upon exhaustion of the underlying coverage provided under the policies with AISLIC, Executive Risk, and Beazley, all of which are lower-tier insurers.  See Compl. ¶ 25; Axis Policy § 1. Specifically, the Axis policy provides that it:

> shall apply only after all applicable Underlying Insurance with respect to an Insurance Product has been exhausted by actual payment under such Underlying Insurance, and shall only pay excess of any retention or deductible amounts provided in the Primary Policy and other exhausted Underlying Insurance.

Axis Policy § 1.

B. Factual Background

Maximus, "a provider of health and human services programs," served as a subcontractor to Accenture, which entered into a prime contract with the Texas Health and Human Services Commission ("HHSC").  Compl. ¶ 11.  As a result of significant problems with the execution of the Accenture contract, Accenture charged Maximus with default, Maximus in turn claimed that Accenture had breached the subcontract, and HHSC declined to pay Accenture for various outstanding invoices.  See Axis Counterclaims ¶¶ 17-22.  On December 12, 2008, Maximus, Accenture, and HHSC entered into a settlement agreement.  As a result of the settlement agreement, Maximus is claiming damages

3

of $40 million in cash settlement payments; $11.6 million in
attorneys' fees; $10 million in "services credits"; and $16.7
million in forgiven invoices, bringing to $78.3 million the
total damages for which Maximus seeks coverage from its various
insurance carriers.  Id. ¶¶ 13-15.

All of Maximus' insurance carriers, including Axis,
received timely notice of the underlying dispute and settlement
with HHSC.  Id. ¶ 18.  Since settling the underlying dispute,
Maximus has sought to collect on its various insurance policies
and has settled with the primary insurer, AISLIC, as well as
with the first two tiers of excess coverage carriers, Executive
Risk and Beazley, for amounts less than the limits of coverage
under those policies.  See Defs.' Opp'n at 4.  In each
settlement, Maximus absorbed the difference between what the
carrier agreed to pay and the policy limit.[2]  On the basis of
Maximus' filling the gap between what each carrier actually paid
and the policy limit, Maximus maintains that it "exhausted the
policy limits afforded by the three policies underlying the
Axis...polic[y]."  Compl. ¶ 33.

This lawsuit was filed after Axis refused to indemnify
Maximus.  Axis has filed an answer and several counterclaims.

---

[2] According to the complaint, "Maximus, as it is permitted to do
under the AISLIC, Executive Risk, and Beazley policies,
contributed, paid or otherwise satisfied the remainder of the
damages falling within those three policy layers that were not
paid by the insurers themselves."  Compl. ¶ 33.

Count I of the Counterclaims requests a declaration that Axis is not liable to Maximus because the underlying coverage with the lower-tier carriers has not been exhausted.  In the pending motion, Maximus seeks dismissal of that Count.

## II.  DISCUSSION

A. Principles for Interpreting Excess Insurance Policies

Axis contends that its policy does not provide coverage unless all of the underlying insurers themselves actually pay the full amount of their respective policies' limits of liability.  Accordingly, defendant argues that Maximus' below-policy-limit settlements with the lower-tier insurers did not exhaust those underlying insurance policies, thereby failing to trigger excess coverage under the Axis Policy.  Maximus counters that the settlements with its underlying insurers did exhaust those policies because plaintiff "filled in the gap" (i.e., paid the difference itself), and is merely seeking the payment from Axis for which it would have been liable had the lower-tier insurers paid the full amounts of their policies.[3]

---

[3] Obviously, to recover from Axis, plaintiff must still prove that its damages exceeded the $60 million required to trigger applicability of the Axis Policy, and must establish that services credits and forgiven invoices would constitute damages. Whether plaintiff's damages reach the $60 million threshold necessary to trigger coverage is an issue raised in Axis' pending Motion for Summary Judgment, which is not yet before the Court.

Whether a contract is ambiguous is a matter of law to be decided by the court. See Commonwealth Group-Winchester Partners, L.P. v. Winchester Warehousing, Inc., 332 F. App'x 913, 919 (4th Cir. 2009). When interpreting an insurance policy under Virginia law, a court must consider that

> an insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction. In the absence of any ambiguity, a court must interpret the contract by examining the language explicitly contained therein. Contracts of insurance are to be liberally construed in favor of the insured, but if they are plain and clear and not in violation of law or inconsistent with public policy, courts are bound to adhere to their terms.

SNL Fin., LC v. Phila. Indem. Ins. Co., 2011 U.S. App. LEXIS 23529, at *9-10 (4th Cir. Nov. 23, 2011) (internal quotations, citations, and alterations omitted). Moreover, "[w]here an insurance policy is susceptible of two constructions, one of which would effectuate coverage and the other not, it is the court's duty to adopt that construction which will effectuate coverage." Mollenauer v. Nationwide Mut. Ins. Co., 214 Va. 131, 132 (1973); see also Breton, LLC v. Graphic Arts Mut. Ins. Co., 446 F. App'x 598, 602 (4th Cir. 2011) ("[W]hen the language of

6

an insurance contract is ambiguous the terms are construed against the insurer.").[4]

Plaintiff relies extensively on the Second Circuit case[5] of Zeig v. Massachussets Bonding & Insurance Co., 23 F.2d 665 (2d Cir. 1928), which sets out an additional factor, specifically

---

[4] Defendant disputes plaintiff's contention that ambiguous policy language should be automatically interpreted against an insurer. See Defs.' Opp'n at 7 n.6.  It also argues that interpretation to avoid risk of forfeiture is inappropriate where "the occurrence of an event as a condition is expressed in unmistakable language."  See id. at 8 (quoting Oppenheimer v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 691 (1995)).  As discussed below, the exhaustion provision of the Axis Policy is sufficiently ambiguous to justify finding in favor of the insured.

[5] The parties do not agree on which state's law applies to this action.  Plaintiff relies on § 17 of the AISLIC primary policy, which was adopted by the Axis "follow-the-form" policy.  Section 17 requires disputes to be submitted to alternative dispute resolution ("ADR") and states that "[t]he dispute or differences considered by the mediator or arbitrators shall be governed by the internal laws of the State of New York."  Although found in the ADR section of the policy, plaintiff maintains that the only logical reading is to extend that choice of law to litigation as well.  Defendant contends that the New York choice of law provision applies only during the ADR process, which has been completed in this case.  Defs.' Opp'n at 5 n.5.  Instead, defendant argues that Virginia law applies because the Axis Policy was issued and delivered in Virginia.

The Axis Policy includes a Virginia Amendatory Endorsement, which modifies certain terms of the policy.  In the Policyholder Notice, the insured is also directed to the Virginia State Corporation Commissions Bureau of Insurance regarding issues with the insurer. In light of these endorsements and the fact that New York law is referenced only in the context of ADR, it is clear that Virginia law controls.  In any event, the parties agree that the outcome of the disputed issues in this action would be the same under either Virginia or New York law.

the public policy favoring settlements, to be considered when
interpreting an exhaustion provision.  Zeig involved an excess
coverage policy that required the primary insurance to be
"exhausted in the payment of claims to the full amount of the
expressed limits."  Id. at 666.  The Zeig court considered
whether under that language it was "necessary for the plaintiff
actually to collect the full amount of the policies...in order
to 'exhaust' that insurance," and found that the language in the
excess policy did not explicitly require the primary insurers to
make full payment in cash on the underlying policies, holding
that "[t]he claims are paid to the full amount of the policies,
if they are settled and discharged, and the primary insurance is
thereby exhausted."  Id.  The Zeig court recognized that
contracting parties could include in their excess policy a
condition requiring a lower-tier insurer itself to pay the full
limit of its policy before the excess coverage policy would be
triggered; however, such a condition would have to be
unambiguously stated in the policy.  Finding that the language
used was not unambiguous, the court also observed that the
insurer "had no rational interest in whether the insured
collected the full amount of the primary policies, so long as it
was only called upon to pay such portion of the loss as was in
excess of the limits of those policies," recognizing that a
contrary holding would "involve delay, promote litigation, and

prevent an adjustment of disputes which is both convenient and commendable." Id.

B. Ambiguity in the Axis Policy

The critical provision of the Axis Policy provides that

The insurance afforded under this Policy shall apply only after all applicable Underlying Insurance with respect to an Insurance Product has been exhausted by actual payment under such Underlying Insurance, and shall only pay excess of any retention or deductible amounts provided in the Primary Policy and other exhausted Underlying Insurance.

Axis Policy § 1.

Axis argues that the term "actual payment" clearly "creates a condition precedent to coverage—namely, that 'actual payment' requires payment by the underlying insurers of the full amount of their respective policy limits before the excess policy coverage attaches." Defs.' Opp'n at 11. Unfortunately for Axis, that language is not the language used in the policy. As many courts have held, "[i]f an excess insurance policy ambiguously defines exhaustion, as in Zeig, courts generally find that settlement with an underlying insurer exhausts the underlying policies." JP Morgan Chase & Co. v. Indian Harbor Ins. Co., 930 N.Y.S.2d 175, at *8 (N.Y. Sup. Ct. May 26, 2011) (quoting Great Am. Ins. Co. v. Bally Total Fitness Holding Corp., No. 06C4554, 2010 U.S. Dist. LEXIS 61553 (N.D. Ill. June 22, 2010)); see also Comerica Inc. v. Zurich Am. Ins. Co., 498 F. Supp. 2d 1019, 1030 (E.D. Mich. 2007).

The Axis Policy conspicuously lacks a definition of "actual payment under such Underlying Insurance." It neither states that actual payment requires payment of the full limit of an underlying policy by the lower-tier carriers, nor does it expressly preclude the insured from filling the gap to exhaust the underlying policy. As plaintiff correctly argues, the Axis Policy's failure to define the extent to which the lower tier carrier must make payment renders its policy more ambiguous than the policy at issue in Zeig, which found ambiguous that part of the policy that was required to "be exhausted in the payment of claims to the full amount of the expressed limits." As the Second Circuit recognized in Zeig, the term "payment" "often is used as meaning the satisfaction of a claim by compromise," i.e., settlement.

Axis contends that allowing a below-limit settlement to exhaust underlying coverage would render the term "actual" in the Axis Policy superfluous. Consistent with the reasoning in Zeig, however, plaintiff offers a plausible rejoinder: that is, once a settlement is agreed-upon and then paid, payment becomes "actual" or real, as opposed to preliminary or hypothetical.

Axis points to several cases to support its position that its policy language unambiguously precludes below-limit settlements; however, most of those cases involved policy

language distinguishable from that in the Axis Policy.[6] For example, in Comerica (decided under Michigan law), the court addressed a below-limit settlement in light of policy language which stated in part:

> INSURING AGREEMENT....Coverage hereunder shall attach only after all such 'Underlying Insurance' has been reduced or exhausted by payments for losses....
>
> DEPLETION OF UNDERLYING LIMITS. In the event of the depletion of the limit(s) of liability of the 'Underlying Insurance' solely as a result of actual payment of loss thereunder by the applicable insurers, this Policy shall...continue to apply to loss as excess [sic] over the amount of insurance remaining.... (alterations in original; 'sic' added).

Comerica, 498 F. Supp. 2d at 1022. The court found such language unambiguously to preclude exhaustion by below-limit

_____

[6] Axis cites only one case interpreting language very similar to that in the Axis Policy. In JP Morgan Chase & Co. v. Indian Harbor Insurace Co., 930 N.Y.S.2d 175 (N.Y. Sup. Ct. May 26, 2011), a New York state trial court applied Illinois law to interpret a series of excess coverage policies. One of the policies at issue included an exhaustion provision requiring "actual payment under such Underlying Insurance" to exhaust the underlying policy. Id. at *11 (regarding Lumbermens' excess policy). The New York court held that

> payments by the insured to fill the gap, settlements that extinguish liability up to the primary insurer's limits, and agreements to give the excess insurer credit against a judgment or settlement up to the primary insurer's liability limit are not the same as actual payment.

Id. (quoting Comerica Inc. v. Zurich Am. Ins. Co., 498 F. Supp. 2d 1019, 1032 (E.D. Mich. 2007)) (alteration omitted). In light of this precedent, the Court recognizes the existence of competing authority on the issues raised in plaintiff's motion; however, JP Morgan was not decided under Virginia law and therefore is not binding on this Court.

settlements, holding that the policy "requires that the primary

insurance be exhausted or depleted by the actual payment of

losses by the underlying insurer," and "actual payment" does not

include "[p]ayments by the insured to fill the gap, settlements

that extinguish liability up to the primary insurer's limits,

and agreements to give the excess insurer 'credit' against a

judgment or settlement up to the primary insurer's liability

limit...." Id. at 1032. Unlike the policy in Comerica, which

clearly requires payment of loss by the insurers themselves,

nothing in the exhaustion provision of the Axis Policy requires

actual payment of the policy limit by the insurance carrier.

     In Great American Insurance Co. v. Bally Total Fitness

Holding Corp., No. 06C4554, 2010 U.S. Dist. LEXIS 61553 (N.D.

Ill. June 22, 2010), the court (applying Illinois law) found

that below-limit settlements with underlying insurers did not

exhaust those policies and trigger excess coverage; however, the

two policies at issue differed substantially from the Axis

Policy by explicitly stating that the lower-tier carriers

themselves must pay the entire policy limit. One policy, for

example, provided that "liability for any covered Loss shall

attach to the Insurer only after the insurers of the Underlying

Policies shall have paid, in the applicable legal currency, the

full amount of the Underlying Limit...." Id. at *1 (emphasis

added). The second policy was triggered "only after all

12

Underlying Insurance has been exhausted by payment of the <u>total</u> <u>underlying limit of insurance</u> and...only if each and every Underlying Insurance Policy has responded by <u>payment of loss</u> as a result of any wrongful act." <u>Id.</u> (emphasis added).[7]

In <u>Citigroup Inc. v. Federal Insurance Co.</u>, 649 F.3d 367 (5th Cir. 2011), the court (applying Texas law) found that a series of excess policies were not triggered by below-limit settlements with underlying insurers. Again, the policies at issue included much clearer language than that in the Axis Policy. For example, one policy provided that coverage attached only "after the <u>total amount of the Underlying Limit of</u> <u>Liability has been paid in legal currency by the insurers</u> of the Underlying Insurance as covered loss thereunder." <u>Id.</u> at 372 (emphasis added). Coverage under another policy was triggered when underlying insurers "shall have agreed to pay or have been held liable to pay <u>the full amount of its respective limits of</u> <u>liability</u>." <u>Id.</u> (emphasis added). Similarly, a California court recently interpreted an exhaustion clause which stated

---

[7] Plaintiff contends that <u>Bally</u> is no longer good law after the Seventh Circuit's decision in <u>Trinity Homes LLC v. Ohio Casualty</u> <u>Insurance Co.</u>, 629 F.3d 653 (7th Cir. 2010), in which the court (applying Indiana law) cited public policy concerns and found an umbrella policy ambiguous when it did not clearly state that the full limit of an underlying policy must be paid only by the insurer rather than through a below-limit settlement with gap-filling by the insured.

that "Underwriters shall be liable only after the insurers under each of the Underlying policies have paid or have been held liable to pay the full amount of the Underlying Limit of Liability." Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London, 73 Cal. Rptr. 3d 770, 778 (Cal. Ct. App. 2008) (emphasis added). The language used in the policies in these cases is easily distinguishable from the language in the Axis Policy, by explicitly requiring payment by the insurers of the full limit of the underlying policies.

The majority of the cases defendant relies upon in fact illustrate that policies can be written so unambiguously as to overcome the public policy concerns articulated in Zeig. Including language making clear that exhaustion requires the carriers themselves to pay out the full amount of their policies, or even a clear statement that settling for less than the full amount of coverage voids the excess coverage, would render the exhaustion provision absolutely clear.

Moreover, Axis has not cited to any Virginia case law interpreting the precise language used in its policy. Plaintiff has cited to one court that has addressed similar language in the context of Virginia law and found in favor of the policyholder.[8]  The Mills, Ltd. v. Liberty Mutual Insurance Co.,

---

[8] Mills was decided under Delaware law.  However, in undertaking a choice of law analysis to determine whether Delaware or

2010 Del. Super. LEXIS 563 (Del. Super. Ct. Nov. 5, 2010),
involved an excess policy which provided that it

> only provides coverage when the Underlying Limit of
> Liability is exhausted by reason of the insurers of
> the Underlying Policies paying or being held liable to
> pay in legal currency the full amount of the
> Underlying Limit of Liability as loss.

Id. at *5.  The defendant insurer argued that "its policy does
not attach because settling with the underlying carriers for
less than their policy limits means Plaintiffs did not actually
exhaust the underlying policies...[and] full payment by the
underlying carriers is expressly required by its policy."  Id.
at *3-4.  Despite that argument, the court ruled in favor of the
policyholder, first explaining that "the majority of
courts...hold that settlement with an underlying carrier
functionally exhausts that carrier's coverage."  Id. at *19.
The court also recognized that such a conclusion did not
disadvantage the excess carrier because its "liability is
completely unchanged whether Plaintiffs have received all of the
underlying payments or not" and explicitly rejected the contrary
reasoning in Qualcomm and Comerica, on which Axis relies.  Id.
at *25-26 (citation omitted).  The Delaware court also adopted
the premise of Zeig, that "there is no business reason offered

---

Virginia law should apply to the action, the Delaware court
concluded that the exhaustion issue would have been resolved in
the same manner under Virginia law, even though the Virginia
Supreme Court had not addressed the question.  See Mills, 2010
Del. Super. LEXIS, at *11.

to explain why it should make a difference to [the excess insurer] if [the plaintiff] settled with the underlying carriers, so long as the [excess] policy was going to be reached even if [the plaintiff] had collected every cent under its underlying policies." Id. at *27-28.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the Axis Policy's exhaustion provision is ambiguous in that it does not clearly require all underlying insurance carriers themselves to pay the full amounts of their policy limits in order to trigger the Axis Policy's coverage and does not clearly provide that settling for less than the policy limit, even if the insured fills the gap, fails to satisfy the exhaustion requirement. Therefore, in light of well-established principles of insurance contract interpretation and the substantial policy considerations articulated by Zeig and its progeny, Maximus' settlements with the underlying insurers for less than the full limits of their respective policies and agreeing to fill the gap so that the policy limits have been reached satisfies the Axis Policy's exhaustion requirement. For these reasons, plaintiff's Motion to Dismiss will be granted by an Order to accompany this Memorandum Opinion.

Entered this _12th_ day of March, 2012.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

16