IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MAXIMUS, INC.<br><br>　　　　Plaintiff,<br><br>v.<br><br>TWIN CITY FIRE INSURANCE CO. and<br>AXIS REINSURANCE CO.<br><br>　　　　Defendants. | Case No. 1:11CV1231-LMB/TRJ |

**PLAINTIFF'S SUBMISSION INFORMING THE COURT OF SIGNIFICANT NEW EVIDENCE AND SUPPLEMENTING ITS OPPOSITION TO DEFENDANT'S FIRST MOTION FOR SUMMARY JUDGMENT**

Plaintiff Maximus, Inc. ("Maximus") respectfully submits this filing informing the Court of significant new evidence and supplementing its opposition to the first motion for summary judgment filed by defendant Axis Reinsurance Co. ("Axis"). As explained below, this submission contains and describes new evidence and legal analysis that Maximus was prepared to provide the Court on March 16, 2012 before the Court suspended argument on the motions in favor of mediation with Magistrate Judge Jones. The new evidence and analysis demonstrates that the Forgiven Invoices constitute recoverable damages.

<u>Procedural background</u>

The facts of this lawsuit have been laid out in great detail in the parties' prior filings. In the 2008 HHSC/Maximus/Accenture Settlement Agreement, Maximus agreed, *inter alia*, to "be deemed to have . . . released, discharged, waived and forgiven all invoices and other Claims owed or allegedly owed by Accenture under or in connection with" the Project (collectively, the

1

"Forgiven Invoices"). (First MSJ Opp., Perkins Dec., Ex. A at 7).[1] Maximus now seeks insurance coverage from Axis for, *inter alia*, a portion of the Forgiven Invoices.

On February 13, 2012, early in the discovery period, Axis filed a motion for summary judgment, contending that the Forgiven Invoices were not damages that Maximus was "legally obligated to pay" under its insurance policy. On February 27, 2012, Maximus filed an opposition to Axis' summary judgment motion, in which it explained that it was still in the process of conducting discovery. (First MSJ Opp. 21). Maximus also appended a copy of its subpoenas to HHSC and Accenture to its summary judgment opposition. (First MSJ Opp., Perkins Dec. ¶ 12, Ex. H, I).

*After* Maximus filed its opposition to Axis' motion for summary judgment, but *just before* the Court's March 16, 2012 hearing on Axis' motion for summary judgment, Maximus and Axis obtained significant documents produced by Accenture and HHSC in response to Maximus' subpoena. (Lowman Dec., ¶¶ 2-3). Maximus now seeks to bring the importance of these documents to the Court's attention for its consideration in deciding what Axis contends is a case-dispositive motion that would eliminate $10 million of insurance coverage. On March 16, 2012, the Court did not render a decision on Axis' summary judgment motions; instead, the Court issued a stay of discovery so that the parties could attempt to negotiate a settlement. (Doc. 79). The parties conducted an unsuccessful mediation session with Magistrate Judge Jones on April 5, 2012.

---

[1] "First MSJ" refers to the Memorandum of Law in support of Axis' first Motion for Summary Judgment (Doc. 48). "First MSJ Opp." refers to Maximus' Opposition to Axis' first Motion for Summary Judgment (Doc. 54). "First MSJ Reply" refers to Axis' Rebuttal Memorandum of Law in support of its first Motion for Summary Judgment (Doc. 61).

Discussion of Newly-Obtained Documents

Maximus respectfully submits that the recently-obtained documents discussed herein establish that the Forgiven Invoices are recoverable damages. The documents show that HHSC and Accenture approved for payment ▅▅▅▅▅▅▅ of Maximus' outstanding work, which Maximus then forgave in consideration of the release of liability it obtained in the three-way settlement. Moreover, once the stay is lifted, Maximus expects to obtain additional documents and testimony from Accenture and HHSC that confirm and quantify Maximus' covered damages. Maximus briefly describes the new documents as follows:

Document #1: HHSC has produced a document entitled "CONFIDENTIAL DRAFT SETTLEMENT DOCUMENT" and dated December 10, 2008 – the day before the Settlement Agreement was signed. (Lowman Dec. Ex. A, produced as MAXRT01111237-242). The first page of this document is a summary of HHSC's financial position during settlement negotiations, and the remainder of the document gives a more detailed financial breakdown of certain elements of the 2008 Settlement Agreement.

On the first page, the document states that the value of "Outstanding Invoices Received by HHSC" is $64,967,737 million, and the "TOTAL VALUE EARNED BY ACCENTURE" (including certain unbilled costs by Accenture) is $70,912,279. It then enumerates certain "state costs" and determines that "TOTAL STATE COSTS" were $112,033,788. It calculates the "Difference Between State Costs and Accenture Earned Amount" (the "Accenture Earned Amount" being the $70.9 million in payable Accenture work) and that amount is $41,121,509. Finally, it states that "TOTAL AMOUNT RECEIVED FROM ACCENTURE Net of Accenture

Outstanding Invoices and Unbilled Earned Credits" is $30,000,000 – *i.e.*, the Maximus $20 million in cash and $10 million in service credits received in the Settlement Agreement.[2]

This document refutes Axis' assertions that the Forgiven Invoices were "disputed" by HHSC, such that the forgiveness of the Forgiven Invoices did not constitute a "payment" equivalent to cash. It also demonstrates that, from HHSC's own perspective, the *majority* of the consideration that HHSC received as part of the Settlement Agreement was the forgiveness of unpaid invoices. The document explains that HHSC contended it sustained $112,033,788 in damages in connection with the Project; under the Settlement Agreement, HHSC recouped $70.9 million of its damages from Accenture and Maximus by refusing to pay for their approved work, and recovered $30 million as a result of Maximus' cash payment ($20 million) and Service Credits ($10 million). Finally, the document does not distinguish between cash and Service Credits – it lumps them together in a single, $30 million figure – supporting Maximus' claim that the Service Credits are indistinguishable from a cash payment.

Document #2: The second critical, newly-obtained document was produced by Accenture. (Lowman Dec. Ex. B.) In this document, Accenture allocates the Forgiven Invoices between Accenture and Maximus, thus proving the precise amount of Maximus' damages.

As previously explained, Accenture was the prime contractor on the Project, and Maximus was the subcontractor. Maximus sent invoices to Accenture, which rolled them into invoices sent to HHSC; HHSC paid Accenture, and Accenture then paid Maximus from the money it received from HHSC.

At the time of the 2008 Settlement Agreement, Maximus had submitted $21 million in outstanding invoices to Accenture. Maximus' invoices were, in turn, included in the $90 million

---

[2] Under the terms of the Settlement Agreement, other than the Forgiven Invoices, Maximus was the only party obligated to pay any other form of consideration.

of invoices Accenture had submitted to HHSC (plus its mark-up) for payment. As shown in Document # 1, HHSC approved $70.9 million of payment for the then-outstanding work, including a portion of the $21 million in Maximus invoices.

At the time Maximus filed its opposition to Axis' summary judgment motion, *Maximus had not yet obtained discovery from Accenture*; however, it then possessed the HHSC document from which it estimated its Forgiven Invoices damages as about $16.7 million. (First MSJ Opp. 20-21). Maximus' opposition specifically noted, however, that "Maximus also has issued a subpoena to Accenture to confirm that the Maximus invoices were included in the Accenture invoices that were approved by HHSC." (*Id.* at 21). Notwithstanding this caveat, Axis' Reply Brief argued that Maximus' damages calculations were "speculative," and that Maximus had "no evidence" to support this item of damages. (First MSJ Reply 14).

Accenture has now responded to Maximus' subpoena and produced a document ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ (Lowman Dec. Ex. B, at 14.) This document not only supports the method by which Maximus itself estimated its portion of the Forgiven Invoices, but also eliminates Axis' arguments that the amount of the Forgiven Invoices is speculative or lacking in evidentiary support. It is important to recognize that Accenture's economic incentive was to *minimize* the amount of money it owed to Maximus, and Maximus was not involved in this allocation process. Given this evidentiary support and the likelihood of more evidence from anticipated deposition testimony on this issue, Maximus respectfully submits that the Court should deny Axis' motion for summary judgment regarding the Forgiven Invoices.

Legal Analysis

Maximus respectfully provides the Court a brief, supplemental legal analysis of why the Forgiven Invoices are insurable damages because these issues were not addressed at the hearing on March 16, 2012. Maximus has not had an opportunity to present its legal arguments against the backdrop of these recently-produced documents. Moreover, in its Reply Brief, Axis offered new analysis in support of its contention that the Forgiven Invoices were not insurable damages, and included numerous cases it had not cited before in its opening brief. Maximus has not had an opportunity to respond to this analysis and authority because the Court did not take argument on that issue at the March 16 hearing. Accordingly, Maximus respectfully requests this opportunity to explain briefly why the new analysis and authority in Axis' Reply Brief, when viewed alongside the newly-obtained documentary evidence, should lead the Court to deny Axis' pending motion for summary judgment.

Contrary to Axis' argument that no case had ever found the forgiveness of a debt or service credits to be within the definition of "legally obligated to pay as damages," the case law actually fully supports Maximus' position. For example, in *In re Feature Realty Litig.*, 634 F. Supp. 2d 1163 (E.D. Wash. 2007), the court construed the term "legally obligated to pay" to encompass "forgiveness of all permit fees that the City would otherwise charge the Plaintiffs." *Id.* at 1167-68.[3] Likewise, in *Travelers Cas. & Sur. Case Co. v. Am. Int'l Surplus Lines Ins. Co.*, 465 F. Supp. 2d 1005 (S.D. Cal. 2007), the policy at issue included a retention amount and stated that the insurer "shall not be obligated to advance any amounts within the retention amount that

---

[3] The court also separately held that the phrase "legally obligated to pay" encompassed a consent judgment under which the insured was not obligated to pay damages unless it obtained insurance. The court reasoned that "the vast majority of Courts" followed this rule, and noted that "[t]he scope of the term, 'legally obligated to pay' is not defined in the policy and is arguably ambiguous, and, as such would have to be construed in favor of the insured" – which supports Maximus' position here. *Id.* at 1168-69.

6

the insured may be *legally obligated to pay*." *Id.* at 1015 (emphasis added). With regard to the retention provision, the court stated: "The court sees no principled difference between receiving a 'credit' against a liability, reducing the amount the insurer would otherwise have been contractually obligated to pay but for the 'credit' taken, and a direct payment . . . by the insured." *Id.* at 1020. That is precisely Maximus' position here.

In fact, Maximus is unaware of a single case in which a court held that an in-kind payment, or the forgiveness of a debt, was *not* a "payment" or an amount a party was "legally required to pay." Axis purports to cite several such cases in its Reply, but those cases do not so hold. The sole Virginia case cited in Axis' reply brief is *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 101 F. Supp. 2d 422 (E.D. Va. 2000). Axis cites this case for the proposition that "[t]he ordinary and plain meaning of damages is 'money claimed by, or ordered to be paid to, a person as compensation for loss or injury.'" (First MSJ Reply 8 (quoting *Morrow*, 101 F. Supp. 2d at 434)). According to Axis, *Morrow* demonstrates that in-kind payments and forgiven invoices do not constitute damages. But this is what *Morrow* actually says:

> [E]nvironmental remediation costs constitute damages within the meaning of a comprehensive general liability insurance policy . . . The ordinary and plain meaning of damages is 'money claimed by, or ordered to be paid to, a person as compensation for loss or injury.' . . . Under this definition, the Greenbriar suit clearly was an action for damages. According to the underlying complaint, Greenbriar sustained a loss, namely the cost of remedying the PCE contamination . . . and Greenbriar sought compensation for that loss. Given this, the Greenbriar suit is plainly a claim for 'damages,' as that term is commonly understood. Furthermore, under Virginia law, to the extent that the policies' reference to damages is ambiguous, the ambiguity must be resolved in favor of granting coverage.

101 F. Supp. 2d at 434-35 (citation omitted). Thus, *Morrow* did not foreclose the possibility that Forgiven Invoices or Service Credits could be considered insurable payments as Axis erroneously suggests.

7

The other cases cited in Axis' Reply Brief similarly have nothing to do with whether non-cash payments in a settlement agreement can be recovered by an insurer. In three of them (*see* First MSJ Reply 5-7), the courts drew a distinction between different *types* of monetary payments; none of those courts so much as hinted that money payments in a settlement and non-money payments such as debt forgiveness in a settlement would be treated differently for insurance purposes. *See Certain Underwriters at Lloyd's of London v. Superior Court of Los Angeles County*, 24 Cal. 4th 945, 962-64 (Cal. 2001) (drawing a distinction between money payments *as part of a court judgment* and money payments *as part of an exterior legal obligation*, such as a traffic fine); *Maryland Cas. Co. v. Armco, Inc.*, 822 F. 2d 1348, 1353 (4th Cir. 1987) (drawing a distinction between monetary damages and monetary restitution payments); *Hi-Port, Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 22 F. Supp. 2d 596, 602 (S.D. Tex. 1997) (drawing a distinction between money payments as part of a legal obligation and money payments that were not part of a court judgment or settlement – i.e., completely gratuitous payments). In the other three (*see* First MSJ Reply 6), the court actually found in favor *of the insured. See Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1216 (Ill. 1992) (holding that "'damages' connotes money one must expend to remedy an injury for which he or she is responsible, *irrespective of whether that expenditure is compelled by a court of law in the form of compensatory damages or by a court of equity in the form of compliance with mandatory injunctions*") (emphasis added; in its reply brief, Axis replaced the italicized portion of this quotation with an ellipsis); *Doyle v. Allstate Ins. Co.*, 1 N.Y.2d 439, 443 (N.Y. 1956); *Scottsdale Ins. Co. v. RSR Mgmt. Co.*, 2000 WL 1456954, at *2 (E.D.N.Y. Sept. 26, 2000). Needless to say, none of these decisions can be construed to reject the possibility of recovering insurance proceeds for nonmonetary damages. Maximus has been unable to identify any case drawing a

distinction, for insurance coverage purposes, between cash and in-kind payments such as the forgiveness of outstanding debts or credits for future work.

In the end, this case comes down to a common-sense interpretation of the Axis insurance policy. The new documents obtained by Maximus demonstrate that (a) HHSC viewed the *majority* of the consideration in the Settlement Agreement as being obtained through the forgiveness of payment it owed for outstanding, approved, payable work, and (b) Accenture and Maximus – the parties responsible for allocating HHSC debts between Accenture and Maximus – agree that Maximus forgave the collection of ▬▬▬▬▬▬▬ in approved, payable work. Thus, the relinquishment of the Forgiven Invoices was the economic equivalent to a cash payment by Maximus – a fact that is now undisputed by *all* of the participants to the Settlement Agreement. The Axis policy nowhere specifies that "legally obligated to pay" refers to "payment in cash" and nowhere contains any clear language justifying the economically irrational distinction Axis attempts to draw in its brief.

Nor would there be any economic rationale for distinguishing between a cash payment and debt forgiveness for insurance purposes. In the absence of an economic rationale to make that distinction, courts have refused to deny insurance coverage. For instance, in *AT&T Corp. v. Clarendon Am. Ins. Co.*, 931 A.2d 409 (Del. 2007), the court construed the "'legally obligated' to pay" provision to apply to situations in which the policyholder did not pay cash, but where settlement was "identical" in "economic substance" to a settlement structured so that the policyholder would pay cash. *Id.* at 416, 420. The court refused to require a "a hypertechnically literal payment" as a prerequisite to insurance coverage. *Id.* at 421. The same reasoning compels the same result here.

Maximus respectfully submits that the Court should consider these two, significant and recently produced documents, and also that it should consider the legal authority that Maximus would have advanced during the March 16 hearing.

Dated: April 11, 2012.

/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL:  (703) 549-5354
FAX:  (703) 549-2604
EMAIL: craig.reilly@ccreillylaw.com
*Counsel for plaintiff Maximus, Inc.*

*Of Counsel for plaintiff Maximus, Inc.:*
Michael K. Lowman (VSB # 41663)
mlowman@jenner.com
Matthew Jacobs (admitted *pro hac vice*)
mjacobs@jenner.com
JENNER & BLOCK LLP
1099 New York Ave., N.W., Suite 900
Washington, D.C. 20001
Phone:  202-639-6000
Fax:  202-639-6066

CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April, 2012, a true and correct copy of the foregoing pleading or paper was served using the Court's CM/ECF system, with electronic notification of such filing to the following counsel of record:

Stephen R. Pickard
115 Oronoco Street
Alexandria, VA 22314
(703) 836-3505
(703) 836-3558
srpickard@aol.com
*Counsel for defendant Axis Reinsurance Co.*

*Of Counsel:*
James F. Rittinger (admitted *pro hac vice*)
Justin E. Klein (admitted *pro hac vice*)
SATTERLEE STEPHENS BURKE
& BURKES LLP
230 Park Avenue
New York, New York 10169
(212) 818-9200 (Phone)
(212) 818-9606 (Fax)
*Counsel for defendant Axis Reinsurance Co.*

/s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL:  (703) 549-5354
FAX:  (703) 549-2604
EMAIL: craig.reilly@ccreillylaw.com
*Counsel for plaintiff Maximus, Inc.*