IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MAXIMUS, INC.,<br><br>   Plaintiff,<br><br> v.<br><br>TWIN CITY FIRE INSURANCE CO. AND AXIS REINSURANCE CO.,<br><br>   Defendants. | Case No. 1:11CV1231-LMB/TRJ<br><br>DEFENDANT AXIS REINSURANCE COMPANY'S OPPOSITION TO MAXIMUS' MOTION FOR LEAVE, OR, IN THE ALTERNATIVE, RESPONSE TO MAXIMUS' PROPOSED BRIEF |

  Defendant-Counterclaimant Axis Reinsurance Co. ("Axis") respectfully submits this short opposition to Maximus Inc.'s ("Maximus") motion for leave to file a supplemental brief or, in the alternative if the Court grants Maximus' motion, requests that the Court consider this response to Maximus' proposed supplemental brief.

**ARGUMENT**

  In its motion seeking leave, Maximus "requests that the Court give leave to make additional legal argument in its supplemental filing, limited to responding to the new legal analysis and authorities cited in Axis' reply brief (Doc. 62)." See Maximus Motion at ¶ 5. Tellingly, Maximus does not – indeed, it cannot – argue that Axis' arguments in its Opening Brief and Reply Brief on its first motion for summary judgment were in any way different. Indeed, Axis argued in both that forgiven invoices and service credits were not as a matter of law amounts that "Maximus was legally obligated to pay as damages." Compare Axis Opening Brief at 20-21 with Axis Reply Brief at 5-9. Instead, Maximus' supplemental filing is really an

attempt to take an extra bite at the apple through a sur-reply to address additional cases cited in Axis' Reply Brief that further undermine its claim. In its motion seeking leave, tellingly, Maximus has cited no case (or rule) in the Eastern District of Virginia that has permitted a party to file an extra brief under these circumstances, particularly where no new legal argument was raised in the reply. For this reason, and because Local Civil Rules 7(F)(1) and 56 limit the parties' briefing to an opening brief and reply brief from the movant, and an opposition brief from the nonmovant, Maximus' motion for leave should be summarily denied.

Even if, however, the Court exercises its discretion to permit the proposed filing, Axis wishes to briefly address the substance of the proposed supplemental filing.

First, in typical fashion, Maximus asserts that "[c]ontrary to Axis' argument that no case had ever found that forgiveness of a debt or service credits to be within the definition of 'legally obligated to pay as damages,' the case law actually fully supports Maximus' position." See proposed Supplemental Brief at 6. However, Maximus then cites three cases (In re Feature Realty Litig., 634 F. Supp. 2d 1163 (E.D. Wash. 2007), Travelers Cas. & Sur. Case Co. v. Am. Int'l Surplus Lines Ins. Co., 465 F. Supp. 2d 1005 (S.D. Cal. 2007), and AT&T Corp. v. Clarendon Am. Ins. Co., 931 A.2d 409 (Del. 2007)) that each have nothing whatsoever to do with either forgiven invoices or service credits and certainly say nothing about whether this type of non-monetary consideration qualifies as an amount an insured is legally obligated to pay as damages.[1] Stated simply, these cases are inapposite. That Maximus has still found no case that

---

[1] In Feature Realty, contrary to Maximus' assertion that the court "construe[d] the term 'legally obligated to pay' to encompass forgiveness of permit fees," (Supplemental Brief at 6), the insured in that case was not even seeking insurance coverage for "forgiveness of permit fees," and the court merely noted in passing that it was the insurer's position that permit fees were the only amounts that the insured had paid. Feature Realty, 634 F. Supp. 2d at 1167-68. Similarly, in Travelers, the court did not address the meaning of "legally obligated to pay" at all. Instead, the portion quoted by Maximus concerned a credit that the insurer had taken of a self-insured retention amount where the insured was insolvent. Travelers, 465 F. Supp. 2d, at 1020. Finally, in AT&T, the court did not address whether the term "legally obligated to pay" applies to non-cash payments or unliquidated, disputed amounts – instead, the court merely addresses who must pay an undisputed sum certain in cash, i.e., the insured or a third party paying on its behalf. AT&T, 931 A.2d at 413.

supports its position is particularly telling. And, of course, Maximus ignores a recent case in the Eastern District of Virginia, applying Virginia law, that held that even voluntary payments by an insured based on the threat of litigation are not amounts an insured is legally obligated to pay. See Builders Mut. Ins. Co. v. Dragas Management Corp., 793 F. Supp. 2d 785 (2011). A fortiori, here, Maximus' voluntary "forgiveness of invoices" and provision of "service credits" to HHSC based on HHSC's threat of pursuing its damages are not recoverable from AXIS.

Second, Maximus argues that supposedly newly discovered evidence from Accenture and HHSC supports its claims here and raises an issue of fact sufficient to defeat summary judgment. At the outset, the salient issue is whether a forgiven invoice is an amount paid as damages sufficient to implicate coverage. As set forth in the extensive briefing on this issue, Maximus has failed to cite a single case in any jurisdiction where the court interpreted the language "legally obligated to pay as damages," much less any case in which a court held that an insurance policy containing this language provided coverage for forgiven invoices or service credits.[2] Tellingly too, Maximus has also cited no case anywhere (even a case that does not mention the phrase "legally obligated to pay as damages") where an insured was permitted to recover from insurance for the value of the very invoices reflecting the work on the project that caused damages. In fact, the only cases Maximus has found that even mention a credit or an invoice involved situations, unlike here, where the amount at issue was liquidated and undisputed. Here, as set forth below, Maximus admitted in 2008 and 2009 that HHSC was refusing to pay any outstanding invoices and that its work on the project for which the invoices were supposedly forgiven caused $250 million in damages.

Indeed, Mr. Perkins' letters to the insurers justifying the settlement in late 2008 and February 2009 expressly admit that Accenture believed it was entitled to be paid for all of the outstanding invoices, but that HHSC was refusing to pay the invoices and that HHSC's view was

---

[2] As discussed in footnote 1, supra, although Maximus cites three additional cases in its Supplemental Brief that mention the language "legally obligated to pay," those cases have absolutely nothing to do with the legal issue before the Court.

3

"diametrically opposed" to Accenture's. Whether Accenture believed it was entitled to be paid (and Maximus to be paid its share) by HHSC is irrelevant; the relevant point is that HHSC, the entity that pays the invoices, <u>was not going to pay the forgiven invoices</u>. Stated simply, Maximus' new documents do nothing to refute the fact that, by Maximus' own admission, HHSC was never going to pay the invoices – even if the documents could be construed to show that some part of the work was not directly responsible for $250 million in damages.[3] Accordingly, Maximus' argument that "relinquishment of the Forgiven Invoices was the economic equivalent to a cash payment by Maximus" (<u>see</u> proposed Supplemental Brief at 9) is both contrary to law and contrary to the evidence, i.e. its own contemporaneous admission to the insurers in justifying the settlement.

Finally, Maximus' proposed Supplemental Brief ignores that Maximus' disclosures to the SEC in connection with the settlement made no mention of the "forgiven invoices" as consideration in the settlement and that Maximus <u>disclosed to its investors that it intended to pursue only the cash payment from its insurers</u> and not the other supposed consideration. While Maximus attempts to argue that it did disclose the forgiven invoices earlier through some "accounting black magic" later in its 2008 10K, it cannot avoid the fact that its subsequent disclosures to the SEC (both in later 10Ks and correspondence with the SEC concerning the settlement) continued to disclose the cash and service credits but consistently failed to mention the forgiven invoices, both as consideration in the settlement and as an amount it intended to pursue from its insurers. <u>See</u> <u>e.g.</u>, SEC filings subsequent to Maximus' 2008 10K addressing the settlement with Accenture and HHSC, excerpted portions of which are annexed hereto as Ex. A.

---

[3] Notably, these "new" documents also have conflicting monetary amounts for the outstanding invoices and are inconsistent with Maximus' own spreadsheet concerning the appropriate amount of so-called "approved" work. This proves precisely why this type of non-monetary consideration, which is not sum-certain, is not insurable loss. <u>Maryland Cas. Co. v. Armco, Inc.</u>, 822 F.2d 1348, 1353 (4th Cir. 1987) ("Insurers require certainty as to the extent of their liability and this certainty is set forth in the insurance policy").

1403101_1

## **CONCLUSION**

For the foregoing reasons, Maximus' motion for leave should be denied or, in the alternative, the Court should consider this brief response in connection with Axis' motion for summary judgment.

Dated: April 12, 2012

| | |
|---|---|
| SATTERLEE STEPHENS BURKE & BURKE LLP<br>James F. Rittinger*<br>Justin E. Klein*<br>230 Park Avenue<br>New York, New York 10169<br>(212) 818-9200 (Phone)<br>(212) 818-9606 (Fax)<br>*Admitted pro hac vice | STEPHEN R. PICKARD P.C.<br><br>By: _____/s/_____<br>Stephen R. Pickard<br>VA Bar # 16374<br>115 Oronoco Street<br>Alexandria, VA 22314<br>(703) 836-3505 (Phone)<br>(703) 836-3558 (Fax)<br>srpickard@aol.com<br>*Attorneys for Defendant Axis Reinsurance Company* |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of April, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Craig Crandall Reilly
Law Office of Craig C. Reilly
111 Oronoco St.
Alexandria, VA  22314
703-549-5354
Fax:  703-549-2604
Email:  craig.reilly@ccreillylaw.com

Michael Keith Lowman
Jenner & Block LLP
1099 New York Ave., NW
Suite 900
Washington DC  20001-4412
202-639-6000
Email:  mlowman@jenner.com

By:___/s/_____
Stephen R. Pickard, Esq.
Stephen R. Pickard P.C.
VA Bar # 16374
115 Oronoco Street
Alexandria, VA 22314
(703) 836-3505
(703) 836-3558 (Fax)
srpickard@aol.com
Attorney for Defendant

1403101_1